**STATE of Tennessee, Appellee,**

v.

**Ruth Marie LOVVORN, Appellant.**

Court of Criminal Appeals of Tennessee, at Nashville.

Feb. 27, 1985.

Permission to Appeal Denied by Supreme Court May 6, 1985.

Charles R. Ray, Nashville, for appellant.

W.J. Michael Cody, Atty. Gen., Kymberly Lynn Anne Hattaway, Asst. Atty. Gen., Richard Fisher, Asst. Dist. Atty. Gen., Nashville, for appellee.

## OPINION

TATUM, Judge.

The defendant, Ruth Marie Lovvorn, has appealed, pursuant to Rule 10, T.R.A.P., from a judgment denying pretrial diversion. The District Attorney General denied the defendant's application for pretrial diversion and the Criminal Court held that the District Attorney did not abuse his discretion. After reviewing the record, we affirm the judgment of the Criminal Court.

In a two-count indictment, the defendant and another were charged with the fraudulent appropriation of $2,625.00 and $375.00 from the Neely Coble Company Employees' Sick Fund over a period of eight months. (violation of T.C.A. § 39-3-1118). The defendant and her codefendant had joint custody of the sick fund.

There was a promissory note in the sum of $2,625.00 payable to the Neely Coble Employees' Sick Fund that defendant's attorney says was executed before the money was taken. However, there is no allegation that the defendant had authority to borrow this money; rather, it is apparent from the record that she is guilty of the offense charged.

The appellant alleges in her Petition for Writ of Certiorari filed in the Criminal Court that she is 41 years of age with no history of criminal involvement. She alleges in the petition that she is married and helps support her family through her employment.

By a letter addressed to the District Attorney General's office, the defendant's attorney requested that an investigation of the defendant's social history and background be conducted pursuant to T.C.A. § 40-15-104, and that defendant be placed on pretrial diversion. The letter sets out insufficient allegations that would entitle her to pretrial diversion. The only facts alleged are that the attorney "understands" that the defendant had no previous charges and that full restitution had been made.

In response to the letter, the District Attorney General informed the defendant's attorney, by letter, as follows:

"Due in part to the repeated number or fraudulent appropriations by Ms. Lovvorne over a long period of time, and because an accomplice was involved, and because Ms. Lovvorne was violating a position of trust, and upon consideration of the amount stolen, we decline to divert this defendant."

After certiorari was requested by the defendant, a hearing was conducted in the Criminal Court with the Assistant District Attorney who denied diversion being the only witness. He was called by defense counsel. The trial judge entered the following order:

"This cause came on to be heard on the Petition for Writ of Certorari (sic), the defendant's request for pre-trial diversion, the State's letter of denial, the testimony of witnesses in open Court, and the entire record, from all of which the Court submits the following findings of fact:

1. The defendant was indicted in a two count indictment with a codefendant, Eugene Sullins.

2. The two count indictment recites successive taking (7 or more) over a period of time from August 1, 1982, to October 30, 1983.

3. The defendants held positions of trust with the employees of the Neely Cable (sic) Company.

4. The defendants are indicted for the fraudulent appropriation of $3,000.00.

5. Defendant Lovvorn requested an investigation and pre-trial diversion.

6. The defendant has no prior record.

7. The State declined to further investigate or divert this defendant based upon a combined consideration of the multiplicity of criminal acts which constituted the 'successive takings' alleged in the indictment, the involvement of another person in the criminal endeavor, the amount stolen and because the defendant and her accomplice continually violated a position of trust of the Neely Cable (sic) Employees' Sick Fund.

It is, therefore, concluded by this Court and the Court finds, that the State has not abused its discretion in failing and refusing to conduct further investigations, or to divert the defendant for the reasons hereinabove set forth, and that pre-trial diversion will not serve the ends of justice and the best interest of both the public and this defendant, it is, therefore, ORDERED that the Petition for Writ of Certorari (sic) shall be and is hereby denied."

According to the testimony of the District Attorney General, his investigation had revealed that the promissory note was placed in the records of the Employees' Sick Fund after the defendant and her co-defendant were "caught." In her petition for certiorari to the Criminal Court, the appellant states that the money was taken from the fund on nine occasions between the months of March and October, 1983. The smallest amount taken was $150 and the largest taken was $800, according to her petition.

On appeal, the appellant first states that it was an abuse of the District Attorney's discretion in not conducting a pretrial investigation pursuant to T.C.A. § 40–15–104(a). She states that the District Attorney did not inform himself of her social history and background before reaching the decision to deny her pretrial diversion. T.C.A. § 40–15–104(a) provides in part as follows:

"Upon stipulation of the parties, the *trial court* by order *may* direct any county or municipal, or authorized private agency, available for this purpose, or the state department of correction if no local agency is available to conduct an investigation of the defendant's background...." (Emphasis supplied)

We first note that this code section authorizes the trial court to order an investigation, when the State and the defendant stipulate that one is appropriate. The District Attorney alone has no authority to order any of the specified agencies to conduct such an investigation. The use of the word "may" in the statute convinces us that it is not mandatory that the trial court order the investigation even when the parties stipulate. We think that it is discretionary on the part of the court to order the investigation. In this case, it was not necessary that the District Attorney be informed of the defendant's social history or background as insisted by the defendant, since pretrial diversion was denied because of factors other than defendant's social history and background.

The primary reason given by the Assistant District Attorney General for refusing to enter into a memorandum of understanding and thereby placing the defendant on pretrial diversion was based upon the circumstances of the offense. This factor is appropriate to consider in determining whether to divert a particular defendant. *State v. Hammersley*, 650 S.W.2d 352 (Tenn.1983). The circumstances of the offense in the case at bar are analogous to, but more serious than, the circumstances in *State v. Holland*, 661 S.W.2d 91 (Tenn.Crim.App.1983) wherein this court affirmed a judgment denying pretrial diversion. In that case, there were repeated incidents of defrauding the Madison County Highway Department of small sums of money by use of fraudulent gravel delivery tickets. In affirming the denial of pretrial diversion, this court stated in part:

"... The criminal activity on the part of the five defendants was extensive and required much planning, deliberation and cooperation. These were not crimes committed upon impulse but involved considerable effort in being carried out and concealed."

The above quotation from the *Holland* case is applicable to the instant case. Here, it was necessary that the defendant and her codefendant both sign the checks drawn on the sick fund account. Both defendants acted in concert in making nine different fraudulent appropriations over a period of approximately eight months. After they were "caught," they attempted to conceal their fraudulent intent by executing a promissory note.

■ This court further held in *Holland* that the fact that the crime "involved deception and deceit and was not a crime of impulse" is a valid reason for refusing diversion. Though expressed in different terms, the District Attorney General in the instant case also applied this criteria. It is applicable.

This court stated in *State v. Poplar,* 612 S.W.2d 498, 501 (Tenn.Crim.App.1980), that the same factors to be considered in probation cases should also be considered in pretrial diversion cases, but that the factors should be more stringently applied against the defendant in diversion cases. This court stated:

"Further, since the Pre-Trial Diversion Act relieves the defendant of the burden of being tried or convicted of a crime, though guilty of violating the criminal law, the criteria should be more stringently applied to diversion applicants than probation applicants. It was not intended that this extraordinary relief be granted routinely to first offenders but only to those who can show that they were above-the-average citizens before impulsively committing an offense and that they can be relied upon to practice good citizenship in the future without the deterrent effects of trial and punishment."

■ In the instant case, there is no proof showing that the defendant was an "above-the-average citizen" and "impulsively" committed these several acts, nor that she could be relied upon to practice good citizenship in the future without the deterrent effects of trial or punishment. In fact, there is no "showing" of any fact by the defendant, whether by affidavit or other form of evidence, which tends to indicate that the defendant is a proper candidate for diversion.

In *State v. Poplar, supra,* the court held that the burden of proof in diversion cases is upon the applicant, stating:

"... The burden of proof is upon the defendant to show that he is entitled to this extraordinary relief. *Frazier v. State,* 556 S.W.2d 239 (Tenn.Cr.App. 1977). The District Attorney General says that Poplar has not shown himself to be entitled to this extraordinary relief, and the evidence supports this finding."

In the instant case, the allegations in the letter sent to the District Attorney were insufficient, even if proven, to entitle the defendant to diversion. Furthermore, the allegations made to the District Attorney in the letter were not substantiated or supported by any form of proof. The defendant merely requested an investigation apparently to "fish" for a reason to grant her diversion. Even if the request had been made to the court as provided by T.C.A. § 40–15–104(a), there was insufficient showing to enable the trial judge to make an informed decision as to whether an investigation would be appropriate. The statute does not contemplate that the State agencies be burdened to investigate every case to determine if there are grounds for diversion. Before a pretrial investigation will be ordered by the court, it must be demonstrated that there is a reasonable chance that a defendant's case is proper for diversion.

■ In the next issue, the appellant states that the decision of the District Attorney General to deny pretrial diversion was based upon the prosecutor's individual policy considerations and not "established

objective standards." She states that this constituted an abuse of discretion.

From the brief, it appears that the appellant is of the opinion that each District Attorney General's office must formulate and maintain specific guidelines establishing "public policy considerations" upon which pretrial diversion would be granted. In support of this contention, she cites *State v. Hammersley, supra.* We do not interpret the *Hammersley* case to hold in accordance with the appellant's insistence. In that case, the court stated:

> "We believe that in order for prosecutors to properly exercise the discretion vested in them by the pretrial diversion statute some objective standards should be established to guide them in the decision-making process."

Then, the Supreme Court in *Hammersley* proceeded to establish "objective standards" to guide District Attorneys General. The court did not hold that standards for pretrial diversion should be created by District Attorneys themselves. If this were done, the "public policy" in each judicial district would be different. In *Hammersley*, the court held that the District Attorney General could not create local policy contrary to or different from that fixed by the legislature for the entire state.

We do not find any abuse of discretion by the District Attorney General. The record supports the finding of the trial court and the action of the District Attorney.

The judgment of the Criminal Court is affirmed.

SCOTT, J., concurs.

DAUGHTREY, J., concurs in result.