# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT JACKSON

### MAY SESSION, 1999

**FILED**

**August 6, 1999**

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | C.C.A. NO. 02C01-9806-CR-00166 |
| | ) | |
| Appellee, | ) | |
| | ) | SHELBY COUNTY |
| V. | ) | |
| | ) | |
| KAVIOUS L. NEWSOM and | ) | HON. CHRIS CRAFT, JUDGE |
| SHANDRA WASHINGTON, | ) | |
| | ) | |
| Appellants. | ) | (THEFT OVER $1,000.00) |

FOR THE APPELLANTS:        FOR THE APPELLEE:

**CHRISTINE D. WORLEY**
Attorney for Defendant Newsom
200 Jefferson Avenue, Suite 1313
Memphis, TN 38103

**BILL ANDERSON, JR.**
Attorney for Defendant Washington
142 North Third Street, Third Floor
Memphis, TN 38103

**PAUL G. SUMMERS**
Attorney General & Reporter

**PATRICIA C. KUSSMANN**
Assistant Attorney General
2nd Floor, Cordell Hull Building
425 Fifth Avenue North
Nashville, TN 37243

**JOHN W. PIEROTTI**
District Attorney General

**DAN BYER**
Assistant District Attorney General
Criminal Justice Center, Suite 301
201 Poplar Avenue
Memphis, TN 38103

OPINION FILED _____

AFFIRMED

THOMAS T. WOODALL, JUDGE

# OPINION

The Defendants, Kavious L. Newsom and Shandra Washington, appeal as of right from their sentences imposed by the Shelby County Criminal Court. Both Defendants pled guilty to the charge of theft over $1,000.00. Defendant Newsom petitioned the court for suspension of his sentence or placement in community corrections. Defendant Washington requested judicial diversion. At the sentencing hearing, the trial court denied any form of alternative sentencing for Defendant Newsom, instead sentencing him to serve two (2) years of incarceration. Defendant Washington was sentenced to serve three (3) years. Of this sentence, Washington was ordered to serve sixty (60) days incarceration on the weekends and was placed on probation by the trial court for two (2) years. Both Defendants appeal the manner of service of their sentences. We affirm as to both Defendants.

When an accused challenges the length, range or the manner of service of a sentence, this court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

In conducting a de novo review of a sentence, this court must consider: (a) the evidence, if any received at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) any statutory mitigating or enhancement factors; (f) any statement that the defendant made on his

own behalf; and (g) the potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, and -210; see State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

If our review reflects that the trial court followed the statutory sentencing procedure, imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and made findings of fact adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

At the guilty plea hearing, the Assistant District Attorney announced the proof it would have presented had there been a trial. The owners of the organization Pop Tunes became aware of substantial losses they had sustained. The owners hired private investigators to use surveillance cameras and to perform physical surveillance of the store to determine the source of the losses in the amount of $180,000.00. While conducting the surveillance, the investigators observed these Defendants involved in a joint effort to steal many compact discs from Pop Tunes.

The Defendants requested alternative sentencing. Minnie Patricia Newsom, Defendant Newsom's mother, testified on his behalf. Mrs. Newsom stated that she did not agree with the Defendant's actions. The Defendant was employed with General Construction Company at the time of the hearing, attended Sunday School and helped to coach a basketball program at a local high school. Because she has diabetes, Defendant Newsom assisted in caring for her. Mrs. Newsom was not

aware of the amount or value of stolen compact discs the Defendant had stolen from Pop Tunes.

Defendant Newsom testified that he was married and had two (2) children, one from a previous marriage. Newsom had been employed as a field supervisor for General Construction Contractors since August of 1996 at the time of the hearing. He was also enrolled at the Shelby State Community College in pursuit of his respiratory therapy license. Defendant Newsom denied using drugs. He admitted to consuming alcohol, but only on special occasions. Newsom acknowledged his prior felony drug conviction in 1991. He served a sentence of split confinement involving four (4) months of incarceration, followed by probation. He also admitted having pending charges for driving on a revoked license, but stated that he now had a valid driver's license.

Defendant Newsom described his actions in this theft as "just bad judgment." Defendant was not an employee of Pop Tunes, but his girlfriend, Defendant Washington, was the store manager. Newsom estimated that he had stolen compact discs from the store on approximately three (3) or four (4) occasions, taking an average of three (3) to five (5) discs each time. However, Newsom admitted that on the last occasion during which he was caught by the investigators, he had taken many more than three (3) to five (5) discs. Newsom explained that he took so many more on that occasion because it was Defendant Washington's last night working at Pop Tunes. He described that on the evening he was caught by the investigators, he walked throughout the store, picked up discs off the racks, and then took them to the counter. Defendant Washington then removed the security wrapping and put them in a box. After the box was full, Newsom exited the store with the box. He

would not state how many discs were stolen that night. Newsom stated that he was willing to do whatever it took to conform to any terms of probation imposed.

Defendant Washington did not present any evidence at the sentencing hearing.

The trial court stated that Defendant "just should have known better. He's already had an alternative sentence." In reviewing the factors of probation, the trial court found that Defendant basically went through the store choosing which compact discs he wanted to steal and then took them. In reviewing Defendant Newsom's prior criminal history, he found that Defendant had either sold or possessed drugs with the intent to sell before and was given the opportunity for an alternative sentence on that charge. In addition, Defendant Newsom had been arrested for driving on a revoked license and once for failure to pay paternity support. The court stated it could not find that Defendant might "reasonably expect to be successfully rehabilitated already because apparently jail didn't mean that much to him the first time. He just didn't get the point. He didn't, quote, learn his lesson, unquote." In addition, the trial court found that the society had an interest in being protected from future criminal conduct by Defendant Newsom.

It is correct that the trial court stated during its ruling that an important factor in denying an alternative sentence was that measures less restrictive than confinement had <u>recently</u> and <u>frequently</u> been applied unsuccessfully to the Defendant. Since the previous conviction of Defendant Newsom was in 1991, we are unable to agree that a sentence less restrictive than confirment had "recently and frequently" been applied unsuccessfully to the Defendant. However, the trial

court also noted that the Defendant was previously allowed to serve only a portion of his previous sentence by incarceration, and that he, nevertheless, continued to commit crimes, i.e. theft of the musical compact discs. The trial court was obviously concerned with the "callous and open" nature of the theft in the present charges.

The trial court went on to observe that while he could not completely put the loss upon the shoulders of Defendant Newsom as he was not an employee of the store, Defendant, "without any regards for it at all . . . stole thousands of dollars from this company. That's the problem. I don't -- I just don't see that he's repented." Finally, the trial court found as relevant the fact that Defendant Newsom had two (2) homes, one (1) of which he had $40,000.00 equity, and was driving two (2) nice automobiles (a 1993 Lexus and a 1996 Chevrolet Tahoe). The court noted that Defendant and his wife were employed and were able to provide for themselves, and that therefore, this was "an absolutely useless, needless crime, and the only thing I know to do it just to make him serve it." The trial court found that the presumption of alternative sentencing was overcome because the Defendant Newsom had an alternative sentence previously and it did not work. See Tenn. Code Ann. § 40-35-102(5).

Defendant Newsom argues that this court should review his sentence de novo without a presumption of correctness. While he correctly notes that the trial court made several misstatements regarding the facts of the case and his prior criminal record, the trial court later corrected himself on these misstatements and did not rely on any incorrect facts in determining Defendant's sentence. Rather, the trial court determined the presumption in favor of alternative sentencing was overcome primarily because measures less restrictive than confinement had recently been

applied unsuccessfully to Defendant Newsom. Defendant Newsom's presentence report reflects that he was convicted of a drug offense, but that conviction was six (6) years prior to this offense. He served four (4) months in prison, with the remainder of his three (3) year sentence for the drug conviction on probation. As stated above, we fail to find that this previous instance of alternative sentencing was either frequently or recently applied as related to his current conviction. In addition, there was no specific proof of deterrence within the jurisdiction which the trial court could have relied upon as a factor overshadowing Defendant Newsom's presumption for an alternative sentence. State v. Bingham, 910 S.W.2d 448, 455 (Tenn. Crim. App. 1995) (citations omitted). Therefore, our review of Defendant Newsom's sentence is de novo without a presumption of correctness.

A defendant who "is an especially mitigated or standard offender convicted of a Class C, D or E felony is presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6). Our sentencing law also provides that "convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society, and evincing failure of past efforts at rehabilitation, shall be given first priority regarding sentences involving incarceration." Tenn. Code Ann. § 40-35-102(5). Thus, a defendant sentenced to eight (8) years or less who is not an offender for whom incarceration is a priority is presumed eligible for alternative sentencing unless sufficient evidence rebuts the presumption. However, the act does not provide that all offenders who meet the criteria are entitled to such relief; rather, it requires that sentencing issues be determined by the facts and circumstances presented in each case. See State v. Taylor, 744 S.W.2d 919, 922 (Tenn. Crim. App. 1987).

Defendant argues the trial court erred in refusing to sentence him to an alternative sentence under the Community Corrections Act. The Community Corrections Act allows certain eligible offenders to participate in community-based alternatives to incarceration. Tenn. Code Ann. § 40-36-103. A defendant must first be a suitable candidate for alternative sentencing. If so, a defendant is then eligible for participation in a community corrections program if he also satisfies several minimum eligibility criteria set forth at Tennessee Code Annotated section 40-36-106(a). The statute provides that the criteria shall be interpreted as minimum standards to guide a trial court's determination of whether that offender is eligible for community corrections. Tenn. Code Ann. § 40-36-106(d).

Under the statutory guidelines, Defendant is an eligible candidate for community corrections. He was convicted of a property-related felony offense which was neither violent nor involved a crime against a person. Tenn. Code Ann. § 40-36-106(a)(2) and (3). In addition, Defendant did not possess a weapon, and he has not demonstrated a present or past pattern of committing violent offenses. Tenn. Code Ann. § 40-36-106(a)(4), (5) and (6). Defendant's presentence report indicated he was a favorable candidate for the community corrections program. In addition, Defendant's employment history demonstrated his willingness to work and to contribute to society. He has continued his education and supports his family. However, after our review of the entire record in this case, we are constrained to agree with the trial court that Defendant Newsom has shown a failure of past efforts at rehabilitation, and should be given a first priority regarding a sentence involving incarceration. This being the case, Defendant is no longer presumed to be a favorable candidate for alternative sentencing options. Tenn. Code Ann. § 40-35-102(5) and (6).

In regards to sentencing Defendant Washington, the trial court found that two (2) enhancement factors applied. First, the Defendant Washington was a leader in the commission of an offense involving two (2) or more criminal actors, to which he gave great weight. See Tenn. Code Ann. § 40-35-114(2). In addition, the court noted that Defendant Washington abused a position of public or private trust in that she was the store's manager and was allowing people to steal from the store. See Tenn. Code Ann. § 40-35-114(15). As the trial court aptly noted, Defendant Washington was being paid by the company not to allow this sort of event to occur, but was instead doing it herself by allowing her boyfriend and others to take thousands of dollars worth of merchandise. The trial court noted that this criminal activity occurred over a period of months, and was not a one-time occurrence. The continuing nature of the offense was particularly disturbing to the trial court. In addition, the amount of property damage to the victim was particularly great. Finally, the deterrence value was considered as "enormous" to the trial court in that if people knew that a manager of a store allowed systematic theft from the store and was then allowed to have her offense erased from her record, that it would be devastating to companies in the community.

The trial court gave great weight to the first two (2) enhancement factors and sentenced her to three (3) years. However, looking at the presumption for an alternative sentence, the trial court placed Defendant Washington on two (2) years of probation after she completed service of sixty (60) days of her sentence on the weekends. Because there was not an exact amount proven for restitution to the victim, the trial court did not require restitution as a condition of her sentence.

Defendant Washington argues the trial court erred in refusing to grant judicial diversion. The question of whether or not to grant judicial diversion is within the trial court's discretion; this court will not interfere with the trial court's denial if there is "any substantial evidence to support the refusal contained in the record." State v. Bonestel, 871 S.W.2d 163, 168 (Tenn. Crim. App. 1993) (citation omitted). The guidelines applicable in probation cases are applicable in diversion cases. They are, however, more stringently applied in diversion cases. State v. Holland, 661 S.W.2d 91, 93 (Tenn. Crim. App. 1983).

Based upon the findings of the trial court and the record, we find that the trial court did not abuse its discretion in denying Defendant Washington judicial diversion. The record supports the trial court's findings that allowing judicial diversion would not properly reflect the seriousness of this offense. Defendant, entrusted as manager of Pop Tunes, systematically allowed others to steal from the store resulting in a loss of great value to that store. While Defendant Washington may not have a prior criminal record, there is some proof in the record that she led others to commit these offenses. Both the circumstances of this offense and the best interest of the public do not favor judicial diversion for Defendant Newsom. Defendant's sentence of three (3) years, with only sixty (60) days of incarceration to be served on weekends, is an appropriate alternative sentence in the case sub judice, and the trial court did not abuse its discretion in denying judicial diversion.

CONCLUSION

Based upon our review of the record, briefs of the parties, and the applicable law, we affirm the judgments of the trial court as to both Defendants.

_____
THOMAS T. WOODALL, Judge


CONCUR:



_____
JOHN H. PEAY, Judge


_____
JOE G. RILEY, Judge