STATE of Tennessee, Appellant,

v.

J.W. MARKHAM, Steve Markham, J.W. Markham & Son, and Ray Holt, Appellees.

Court of Criminal Appeals of Tennessee, at Nashville.

June 23, 1988.

William E. Boston, Bobby W. Sands, Boston, Bates, Holt & Sands, Lawrenceburg, for J.W. Markham, Steve Markham, and J.W. Markham and Son, Inc.

Jerry Wallace, Pulaski, for Ray Holt.

W.J. Michael Cody, Atty. Gen. and Reporter, Kymberly Lynn Anne Hattaway, Asst. Atty. Gen., Nashville, for appellant.

## OPINION

REID, Judge.

This case presents a Rule 9, T.R.A.P., appeal by the State from the judgment of the criminal court finding that the action of the district attorney general denying Appellees' applications for pretrial diversion constituted abuse of discretion.

The record supports the judgment of the trial court.

Appellees, J.W. Markham, Steve Markham and Ray Holt, were charged on a two-count indictment with conspiring to defraud the State of Tennessee with regard to contracts for the construction of two highway bridges. The indictment alleges that J.W. Markham and Steve Markham, principals in J.W. Markham and Son, Inc. (Markham), in violation of T.C.A. § 39-1-605 and the terms of the contracts between Markham and the State, agreed to pay Holt, an engineer employed by the State Department of Transportation, to perform "construction stakes, lines and grades" engineering which was the responsibility of Markham. In furtherance of the agreement, which all parties knew was unlawful, Holt and other State employees under his supervision performed for a period of six months the engineering services on State time. Holt was paid $6,400.00 of an agreed $14,750.00 before the arrangement was discovered by the Department of Transportation.

Prior to the contracts on which this case is based, Markham had constructed 50 to 60 highway projects for the State, on all of which the State, rather than the contractor, was required to furnish the engineering services. Except for that change in the contracts, Holt would have performed the engineering on the subject contracts on behalf of the State.

Markham's incentive for the conspiracy was convenience in obtaining engineering services, Holt's was a personal financial crisis.

The contracts were completed by Markham and the State recouped its loss by withholding funds for the engineering services.

Upon Appellees' applications for pretrial diversion, alleging the statutory qualifications and requesting pretrial investigation pursuant to T.C.A. § 40-15-104, an agreed order was entered continuing the case until the investigation had been completed. However, prior to receipt of the investigation report the district attorney general denied the applications for diversion, giving as his reasons: "(T)he criminal activity of all the defendants was extensive, was not impulsive and required considerable effort and planning by all parties. In addition the deterrence factor must be considered in this type of crime ..."

The pretrial investigation report filed by a State correctional counselor reflected a detailed background investigation of the appellees and concluded that each "would be a good candidate for probation and a minimum risk to the community".

After receiving the report the district attorney general reaffirmed his denial, stating, "There was nothing in the probation report that would change my mind".

In reviewing the testimony presented by Appellees at the hearing on their petitions for certiorari review the action of the district attorney general, the trial court stated:

All the witnesses testified that they were personally and professionally acquainted with Mr. J.W. Markham, his son Steve, and were familiar with their business J.W. Markham and Sons, Inc. The witnesses testified to the effect that the

Defendants J.W. Markham and Steve Markham were men of outstanding character and personal habits, and noted for the quality of their work....

The State presented Inspector General Tom Anderson, the prosecutor, who testified to the facts of the case. He also indicated that the Defendants were co-operative with him, and had complied with every request. Mr. Anderson testified further that he had conducted a limited background check on the Defendants and knew their basic biographical data, and that none of the defendants had any prior criminal record. Mr. Anderson indicated that but for the present case he uniformly found the defendants to be respected, well liked in their respective professions, and individuals who enjoyed a good reputation.

....

All of the above stated witnesses testified to the effect that Mr. Holt was a man noted for his community spirit and compassion. These witnesses reported that Mr. Holt was known as an exceptionally dedicated and hard worker who had been actively involved in community affairs over the years.

The Court also heard from each of the Defendants who testified that they were remorseful, ashamed and willing to comply with the terms of probation.

The Court's Findings of Fact and Conclusions of Law include the following:

Before the Court stands three Defendants: who heretofore have acquired the respect of their friends and professional associates. Each has served his community and has been a contributing/productive member of society. From this record the Court would feel compelled to grant probation on these facts even if a conviction were to result from trial. The court is mindful that "the same guidelines applicable in diversion cases as are applicable in probation cases but they are more stringently applied to an applicant for pre-trial diversion." *State v. Poplar*, 612 S.W.2d 498 (Tenn.Crim.App.1980). The Court after considering all that was presented in this cause, including the pre-

diversion reports, is of the opinion that, even if convicted by a jury, the imposition of a sentence absent probation would be something this court could not bring itself to do. The Defendants have suffered substantially from their mistakes. The Court is impressed with the sincerity, candor, and genuine remorsefulness of these Defendants. The Court takes particular notice that Mr. Ray Holt committed the alleged acts at a time of great emotional distress, family trauma, and financial uncertainty. The Court also cannot find that the Defendants' acts resulted in actual loss to the State.

The court ordered that the appellees be placed on pretrial diversion subject to the usual conditions and that each be required to perform 120 hours of public service.

The issue before this Court is whether the evidence preponderates against the finding of the trial judge that the district attorney general abused his discretion in denying the applications for pretrial diversion. *State v. Watkins*, 607 S.W.2d 486 (Tenn.Crim.App.1980); *State v. Poplar*, 612 S.W.2d 498 Tenn.Crim.App.1980).

Pretrial diversion, as a post-indictment alternative to *nolle prosequi* and trial to verdict, is available to those who meet the statutory qualifications.

It represents a declaration of public policy by the legislature that diversion of certain classes of offenders from the normal criminal process, in an effort to rehabilitate and restore them to useful and productive citizenship and simultaneously to conserve judicial manpower and reduce court congestion, is in the public interest. *Pace v. State*, 566 S.W.2d 861 at 870 (Tenn.1978) (concurring opinion).

The Supreme Court has stated in *Pace v. State*, *supra* and *State v. Hammersley*, 650 S.W.2d 352 (Tenn.1983) that the following factors and circumstances should be considered in determining if diversion is warranted: circumstances of the offense; the criminal record, social history and present condition of the defendant, including his mental and physical conditions where appropriate; the deterrent effect of punishment upon other criminal activity;

defendant's amenability to correction; the likelihood that pretrial diversion will serve the ends of justice and the best interests of both the public and defendant; and the applicant's attitude, behavior since arrest, prior record, home environment, current drug usage, current alcohol usage, emotional stability, past employment, general reputation, marital stability, family responsibility and attitude of law enforcement.

In determining if a defendant qualifies for pretrial diversion, the district attorney general is required to perform the essentially judicial function on a case-by-case basis, assigning due significance to all relevant factors. In making the determination the district attorney general may not act arbitrarily or capriciously and he may not apply a policy contrary to or different from that provided by law or refuse diversion because he is opposed to the program. *Hammersley, supra; Pace, surpa.*

 The State, on appeal, acknowledges that Appellees do not have criminal records, that they are persons of good character and are amenable to correction. However, the State contends that denial can be justified on the circumstances of the crime and deterrence, citing *State v. Sutton,* 668 S.W.2d 678, 680 (Tenn.Crim.App. 1984). The State also relies upon *State v. Lovvorn,* 691 S.W.2d 574, 577 (Tenn.Crim. App.1985); *State v. Holland,* 661 S.W.2d 91, 93 (Tenn.Crim.App.1983); *State v. Watkins,* 607 S.W.2d 486, 488 (Tenn.Crim. App.1980); and *Murray v. State,* 586 S.W.2d 839, 840 (Tenn.Crim.App.1979). In all the cases cited by the State the trial court affirmed the district attorney general's denial of diversion. In *Sutton* the defendant was extensively involved in the disassembly and alteration of stolen automobiles; in *Murray* multiple charges were pending against the defendant; in *Watkins* the appellant was having "more than a casual flirtation with marijuana"; in *Lovvorn* this Court found, "there is no 'showing' of any fact by the defendant, whether by affidavit or other form of evidence which tends to indicate that the defendant is a proper candidate for diversion". *Supra,* at 577.

The cases cited by the State affirm that the circumstances of the crime and the need for deterrence may be of such overwhelming significance that they outweigh all other factors. However, those cases do not hold that the district attorney general may disregard other relevant factors and consider only the circumstances of the crime and need for deterrence. An applicant may present and the district attorney general must consider evidence which tends to show that the applicant is amenable to correction and is not likely to commit further criminal acts.

Since the district attorney general denied the application for diversion prior to completion of the pretrial investigation authorized by statute, his decision was made without the benefit of the report, which found Appellees to be good candidates for diversion. There is no evidence in the record which suggests that in this case deterrence is an overriding consideration. There is no showing that the facts of this case are particularly flagrant in comparison with other criminal conspiracies designed to defraud the State. Denial of diversion based only on the essential elements of a crime, without judicially weighing all relevant factors, effectively excludes persons charged with that crime from consideration for pretrial diversion. Only the legislature has that prerogative.

The Court found that because the district attorney general did not consider the factors deemed relevant in *Pace* and *Hammersley* and based his decision entirely on the circumstances of the case and deterrence, the denial of pretrial diversion constituted an abuse of discretion.

The evidence in the record does not preponderate against the trial court's finding and the judgment of that court is affirmed.

BYERS and WADE, JJ., concur.